IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA L. RODGERS, individually | ) | |
| and as Administratrix of THE ESTATE | ) | C.A. No. 25-124 Erie |
| OF STEVEN C. RODGERS, JR., deceased | ) | |
| Plaintiff, | ) | |
| | ) | District Judge Susan Paradise Baxter |
| vs. | ) | |
| | ) | |
| OWS ENERGY LLC, ERIC COSTON, | ) | |
| Individually, CRAWFORD COUNTY, | ) | |
| and HATHEWAY-TEDESCO FUNERAL | ) | |
| HOME, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

### A.    Relevant Procedural History

Plaintiff Amanda L. Rodgers, individually and as Administratrix of the Estate of Steven C. Rodgers, deceased ("Decedent"), initiated this action by filing a complaint on May 15, 2025, against Defendants OWS Energy LLC ("OWS"), Crawford County Coroner Eric Coston ("Coston"), Crawford County ("Crawford"), and Hatheway-Tedesco Funeral Home, Inc. ("Funeral Home"). The case arises from the unfortunate suicide of Decedent on or about February 6, 2025, and the subsequent cremation of Decedent's remains by Defendant Funeral Home at the direction of Defendant Coston.

In her complaint, Plaintiff asserts six claims: (1) Wrongful Death pursuant to 42 Pa. C.S. § 8301 against Defendant OWS; (2) Negligence regarding Cremation of Remains against Defendants Coston and Crawford (hereinafter collectively referred to as "Crawford Defendants"); (3) Deprivation of Property without Due Process in violation of the 14th Amendment against the Crawford Defendants; (4) Violation of Pennsylvania's Unfair Trade

1

Practices and Consumer Protection Law against Defendant Funeral Home; (5) Negligence regarding Cremation of Remains against Defendant Funeral Home; and (6) Negligence regarding Withholding of remains against Defendant Funeral Home and the Crawford Defendants.

Presently pending before the Court are motions to dismiss filed by Defendant OWS [ECF No. 12] and the Crawford Defendants [ECF No. 19].[1] Both motions have been fully briefed by the parties. This matter is now ripe for consideration.

**B.    Relevant Factual History[2]**

Decedent was employed by Defendant OWS as Production Superintendent since 2021. [ECF No. 1, at ¶ 14]. Sometime in 2024, Decedent moved into a home owned by Defendant OWS at 6209 Pettis Road, Cochranton, Pennsylvania ("Pettis Road home").[3] For years, Decedent struggled with his mental health and frequently spoke about having suicidal ideations with his friends, family, and co-workers. (Id. at ¶¶ 18-19).

On February 6, 2025, Decedent sent an email to an agent for Defendant OWS stating that he would not be returning to work. (Id. at ¶ 20). Shortly after sending this email, Decedent committed suicide in the Pettis Road home. (Id. at ¶ 21). At around 10:00 am. on February 10, 2025, police performed a wellness check at the Pettis Road home and found Decedent's body. (Id. at ¶ 22). Within hours of the discovery of Decedent's body, Defendant Coston directed

---

[1] Defendant Funeral Home has filed an answer to Plaintiff's complaint and a crossclaim against Defendant OWS and the Crawford Defendants. [ECF No.17].

[2] The factual history set forth herein is gleaned from the relevant allegations of the complaint, which are assumed to be true for purposes of Defendants' motions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Any allegations specifically pertaining to Defendant Funeral Home are excluded, as the claims against it are not under consideration at this time.

[3] At the time, Decedent was separated from Plaintiff, to whom he was legally married since 2007. (ECF No. 1, at ¶¶ 12, 15).

Defendant Funeral Home to cremate his body without first attempting to contact Plaintiff or any of Decedent's family members. (Id. at ¶¶ 23-24). Around 12:30 p.m. that same day, Plaintiff was informed by Pennsylvania State Police Trooper Baldwin that Decedent had been found dead and that his body had been cremated. (Id. at ¶ 26). Trooper Baldwin told Plaintiff that Defendant Coston had made the decision to cremate the body and that Defendant Crawford would cover the cost of the cremation. (Id. at ¶ 27).

After Trooper Baldwin left her home, Plaintiff called Defendant Coston, who explained that he had made the decision to cremate Decedent because his body had broken down and had become unrecognizable and needed to be cremated as soon as possible. (Id. at ¶¶ 29-30). Defendant Coston advised Plaintiff that the Decedent was cremated by Defendant Funeral Home and that Plaintiff should contact them to discuss further arrangements. (Id. at ¶ 31).

On March 6, 2025, Plaintiff contacted Defendant Funeral Home and asked it for the Decedent's ashes. (Id. at ¶ 46). The answering agent for Defendant Funeral Home told Plaintiff that they relinquished possession of the ashes to Defendant Coston because Plaintiff had not paid the cremation bill. (Id. at ¶ 47). Plaintiff then contacted Defendant Coston asking for the ashes, and Defendant Coston told Plaintiff that she would not get the ashes until the Funeral Home's bill was paid. (Id. at ¶ 48).

## II.    DISCUSSION

### A.    Wrongful Death Claim v. Defendant OWS

Plaintiff alleges that Defendant OWS knew that Decedent struggled with his mental health and had suicidal ideations because he shared his struggles with agents for Defendant OWS and "frequently exhibited severe mental distress in front of agents for Defendant OWS, including crying at his desk in the OWS office, in full view of agents for OWS." (Id. at ¶ 54). Based on this, Plaintiff avers that Defendant OWS "should have perceived that there was a risk, or that it

was likely, that [Decedent] would attempt to harm himself," and "could have prevented [Decedent] from committing suicide had it notified his family of his emotional outbursts and threats of suicide, offered or requested that [Decedent] seek mental-health treatment, or taken other reasonable measures," but failed to do so. (Id. at ¶¶ 55-56). Thus, Plaintiff claims that, "[a]s a result of Defendant OWS's actions, [Decedent] committed suicide,..." (Id. at ¶ 57).

Defendant OWS asserts, *inter alia*, that Plaintiff's wrongful death claim is not cognizable under Pennsylvania law and must be dismissed.[4] The Court agrees.

In McPeake v. William T. Cannon, Esquire, P.C., 553 A.2d 439, 440-41 (Pa. Super. 1989), the Pennsylvania Superior Court held that suicide is generally not recognized as a basis for wrongful death recovery "because suicide constitutes an independent intervening act so extraordinary as to not have been reasonably foreseeable by the original tortfeasor." Courts applying Pennsylvania law have consistently cited this holding to bar negligence and wrongful death claims arising from suicide. See, e.g., Sullivan v. Truist Bank, 715 F.Supp.3d 668, 672-74 (E.D. Pa. 2024); Amspacher v. Red Lion Area Sch. Dist., 2024 WL 4631815, at *5 (M.D. Pa. Oct. 30, 2024); Estate of Puza v. Carbon Cty., 586 F.Supp.2d 271, 274-76 (M.D. Pa. 2007), aff'd sub. nom. Barker-Puza v. Carbon Cty., 304 Fed. Appx. 47 (3d Cir. 2008).

There are, however, certain discrete exceptions to this general rule that have been recognized under Pennsylvania law. One exception exists for "suits brought under the worker's compensation statute." McPeake, 553 A.2d at 441. Another exists for cases involving mental

---

[4] Defendant OWS also argues that Plaintiff's wrongful death claim is not cognizable because Plaintiff's exclusive remedy is under Pennsylvania's Worker's Compensation Act ('the Act"), 77 Pa. C.S. § 1, *et seq.* (ECF No. 13, at pp. 4-5); however, the Court agrees with Plaintiff that Decedent was not engaged in the furtherance of OWS's business or affairs at the time of his death. Indeed, Plaintiff alleges that Decedent's death was preceded by his email informing OWS that he "would not be returning to work." (ECF No. 1, at ¶ 20). Thus, the Court finds that Decedent's death was not compensable under the Act because it did not result from an injury that "ar[ose] in the course of his employment and related thereto ..." 77 Pa. C.S. § 411.

4

health institutions and professionals, "where there is a custodial relationship and the defendant has a recognized duty of care towards the decedent." Id. Finally, for cases not involving health care institutions, liability may be predicated upon "both a clear showing of a duty to prevent the decedent's suicide and a direct causal connection between the alleged negligence and the suicide." Id.

Here, it is clear that Defendant OWS did not have a custodial relationship with the Decedent. Additionally, this case does not involve a wrongful death action brought under the worker's compensation statute. Thus, Defendant OWS does not fall under either of the first two exceptions. The only other exception possible is where there is a clear showing of a duty to prevent the suicide and a direct causal connection between the alleged negligence and the suicide. It is this exception that Plaintiff apparently seeks to apply here.

In so doing, Plaintiff attempts to draw a correlation between the facts of this case and the facts in Sabo v. UPMC Altoona, 386 F.Supp.3d 530 (W.D. Pa. 2019), which is the lone outlier among district courts in this Circuit to have created an exception to the general rule announced in McPeake by imposing "a general duty of care on employers where a recently terminated employee expresses suicidal thoughts while still on the employer's premises." Id. at 559.[5] In Sabo, the plaintiff exhibited signs of distress immediately after being terminated from her employment with the defendant, explicitly telling her supervisors before leaving the work premises that she "wanted to kill herself," that "her job was her life" and that "she might as well just end it." Sabo, 386 F.Supp.3d at 542. Based on these explicit threats by Plaintiff to end her

---

[5] In so doing, the Sabo court applied the following five factor test announced in Althaus ex rel. Althaus v. Cohen, 756 A.2d 1166, 1169 (2000) to determine whether a duty of care existed: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and the foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

life, the court distinguished McPeake by finding, *inter alia*, that "both [supervisors] were aware that [plaintiff] threatened suicide after her termination, and before they allowed her to leave [defendant's] premises." Id. at 559-60. Thus, the Sabo court concluded that "[plaintiff's] attempted suicide was more foreseeable than the suicide[] in McPeake" and, therefore, "[d]efendant had a duty of care to take reasonable actions to attempt to prevent [plaintiff's] reasonably foreseeable suicide attempt," particularly while the plaintiff was still on defendant's work premises. Id. at 560. Such is not the case here.

In this case, although Plaintiff makes generalized allegations that Decedent shared his mental health struggles and suicidal ideations with his coworkers, and "frequently exhibited severe mental distress in front of agents for Defendant OWS, including crying at his desk in the OWS office, in full view of agents for OWS" (ECF No. 1 at ¶ 54), Plaintiff does not allege that Decedent made any specific threats to take his own life either immediately before sending his email stating that he would not be returning to work, or within the body of the email itself. Moreover, unlike the plaintiff in Sabo, Decedent was not on OWS's work premises when he sent the email, nor was his mental or emotional state visible to OWS's agents. Thus, Decedent's suicide cannot be said to have been "plainly foreseeable" to Defendant OWS. Instead, Plaintiff's assertion that Defendant OWS "should have perceived that there was a risk, or that it was likely, that [Decedent] would attempt to harm himself" is speculative at best. In short, the instant case does not fall within the narrow, fact-specific exception created by the Court in Sabo, and Plaintiff's reliance upon the same is unavailing.[6]

---

[6] Alternatively, Plaintiff argues that "[e]ven if this Court finds *Sabo* inapplicable to the instant case, this Court may recognize a new duty of care under *Althaus ex rel;. Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000)" (ECF No. 15, at p. 6); however, this is little more than an end-around attempt to apply Sabo to the facts of this case, as evidenced by Plaintiff's concluding statement after application of the Althaus factors: "this Court has recognized a duty under these exact circumstances - an employer-employee relationship." (Id., at p. 8, citing Sabo).

6

Accordingly, under well-established Pennsylvania law, Plaintiff's allegations fail to state a cognizable claim of wrongful death against Defendant OWS, and such claim will be dismissed.

### B.     High Public Official Immunity – Defendant Coston

Plaintiff brings state law claims of negligence against the Crawford Defendants arising from Defendant Coston's direction to have Decedent's remains cremated without first obtaining Plaintiff's authorization pursuant to 20 Pa. C.S. § 305(b) (identified as Plaintiff's "Second Claim"), and his decision to withhold Decedent's remains from Plaintiff (identified as Plaintiff's "Sixth Claim"). The Crawford Defendants have moved to dismiss these claims against Defendant Coston based upon, *inter alia*, the high public official immunity afforded the office of County Coroner. See Feldman v. Hoffman, 10 A.2d 821 (Pa. Cmwlth. 2014) (holding that a county coroner is a high-ranking official).

"In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." Doe v. Franklin County, 174 A.3d 593, 603 (Pa. 2017). Thus, absolute immunity applies if (1) the individual is determined to be a high public official, and (2) the statements made or actions taken were in the course of the official's duty or power and within the scope of his authority. Mollan v. Lindner, 677 A.2d 1194, 1199 (Pa. 1996).

In Lindner, the Pennsylvania Supreme Court explained absolute high public official immunity, as follows:

> [T]he doctrine of absolute privilege for high public officials, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, **provided** the statements are made or **the actions are taken in the course of the official's duties or**

7

> **powers and within the scope of his authority**, or as it is sometimes expressed, within his jurisdiction.

677 A.2d at 1195 (citations omitted) (emphasis added).

Here, Plaintiff has conceded that Defendant Coston was a "high public official" at the time of his actions in this case, and that, in general, "the possession and handling of the body of a deceased falls within the course of a coroner's official duty or power." (ECF No. 22, at pp. 3-4). Nonetheless, Plaintiff argues that Defendant Coston's "decision to cremate [Decedent's] body and his direction to the funeral home to take such action fell outside the scope of his authority" because such action "violated clear statutory law" requiring the prior "approval of the next of kin" before cremating Decedent's remains. Id., at p. 4). In particular, Plaintiff cites 20 Pa. C.S. § 305(b), which provides, in relevant part, that "a surviving spouse shall have the sole authority in all matters pertaining to the disposition of the remains of [a deceased spouse]." Based on the clear language of this statute, the Court finds that Plaintiff has sufficiently alleged that Defendant Coston's decision to have the Decedent's remains cremated without first obtaining Plaintiff's authorization fell outside his scope of authority, such that the absolute privilege of high public official immunity does not apply to the facts, as alleged.[7] Thus, the Crawford Defendants' motion to dismiss Plaintiff's state law claims against Defendant Coston based upon the application of high public official immunity will be denied.[8]

---

[7] In making this determination, the Court acknowledges the Crawford Defendants' argument that Plaintiff's own allegations establish that Defendant Coston's decision to have Decedent's remains cremated immediately was a reasonable exercise of his discretion as coroner because Decedent's "body had broken down and become unrecognizable." (ECF No. 23, at p. 2; ECF No. 1, at ¶ 30). However, Pennsylvania law is not at all clear whether cremating Decedent's remains under such circumstances, without first obtaining Plaintiff's authorization, was so plainly within Defendant Coston's scope of authority that absolute immunity should attach.

[8] Although the Crawford Defendants have also moved to dismiss Plaintiff's Sixth Claim of negligence against Defendant Coston, regarding the withholding of Decedent's remains, based upon high public official immunity, their briefs [ECF Nos. 20, 23] are devoid of any legal argument specifically pertaining to the application of immunity to such claim. Thus, the Court will simply deny the motion in this regard.

8

C.    **Immunity Under the Political Subdivision Tort Claims Act**

The Crawford Defendants next move to dismiss Plaintiff's state law claims against them based upon the immunity provided by Pennsylvania's Political Subdivision Tort Claims Act ("the Act"), 42 Pa. C.S. §§ 8541-8564.

1.    **Defendant Crawford**

Plaintiff essentially alleges vicarious liability claims against Defendant Crawford arising from the actions of Defendant Coston, who was allegedly acting "within the course and scope of his employment." (ECF No. 1, at ¶¶ 70, 106). Specifically, Plaintiff alleges a claim of negligence arising from Defendant Coston's direction to have Decedent's remains cremated without Plaintiff's prior authorization (Second Claim), and a second claim of negligence arising from Defendant Coston's withholding of Decedent's remains from Plaintiff (Sixth Claim).

The Act states that:

> Except where otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S. § 8541.

Under the Act, the term "local agency" includes political subdivisions like Defendant Crawford who, thus, has immunity under the statute. See 42 Pa. C.S. § 8501; Adams v. Luzerne County, 36 F.Supp.3d 511, 525 (M.D. Pa. 2014) (finding "Luzerne County qualifies as a local agency under [the Act]"); Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre, 861 F.Supp.2d 470, 489 (M.D. Pa. 2012) (same). This immunity is narrowly limited by Section 8542 of the Act, which sets forth specific conditions necessary to bring an action against a local agency:

> **(a) Liability imposed.**--A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
>> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>>
>> (2) The injury was caused by the **negligent acts** of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. C.S. § 8542 (emphasis added).

Liability under the Act may only be imposed on a local agency for the negligent acts specified in subsection (b) of Section 8542, which lists nine exceptions to local agency immunity: (1) vehicle liability, (2) care, custody or control of personal property, (3) care, custody or control of real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, (8) care, custody or control of animals, and (9) sexual abuse. 42 Pa. C.S. § 8542(b). Pennsylvania courts consistently construe these exceptions strictly in order to carry out the legislative intent to provide political subdivisions with immunity. Kiley v. City of Philadelphia, 645 A.2d 184, 185-86 (Pa. 1994); Walsh v. City of Philadelphia, 585 A.2d 445 (Pa. 1991). Thus, a plaintiff seeking to impose liability upon a local agency has the burden of establishing that the agency's allegedly negligent act falls within one of the Act's exceptions to governmental immunity. Mickle v. City of Philadelphia, 669 A.2d 520, 522-23 (Pa. Cmwlth. 1996).

10

Here, the Crawford Defendants argue that Plaintiff's state law claims against Defendant Crawford, by virtue of the actions of Defendant Coston, "do not fit within any of the enumerated exceptions to immunity and therefore must be dismissed." (ECF No. 20, at p. 11). Plaintiff, however, counters that the actions at issue are excepted from local agency immunity under Section 8542(b)(2) of the Act, which provides that liability may be imposed on a local agency resulting from "[t]he [negligent] care, custody or control of personal property of others in the possession of the local agency." (ECF No. 22, at p. 5). In so doing, Plaintiff notes that "'Pennsylvania courts have long recognized a quasi-property right in a decedent's body for the next-of-kin.'" Id. at p. 6, quoting LaLoup v. United States, 29 F.Supp.3d 530, 548 (E.D. Pa. 2014) (citations omitted). Thus, based on this recognized quasi-property interest, Plaintiff asserts that her negligence claims against Defendant Crawford "relate to the care, custody or control of personal property – the body and, subsequently, the ashes – of the deceased," and are, therefore, excepted from the Act's immunity.

A similar claim was made in the case of Whitson v. City of Philadelphia, 2008 WL 4739532 (E.D. Pa. Oct. 27, 2008), where the court observed, as Plaintiff does here, that "multiple trial courts in Pennsylvania have recognized that next of kin have special "quasi property" rights in a decedent's remains arising out of their duty to bury the dead." Id. at *5 (citations omitted). Nonetheless, the Whitson court opined that "[g]iven the unsettled law in Pennsylvania, this Court declines to predict whether the Pennsylvania Supreme Court would find that a corpse is the 'personal property' of the decedent's next of kin for purposes of 42 Pa. C.S. § 8542(b)(2)." Id. at *6. Instead, the court deferred to the reasoning of the Pennsylvania Commonwealth Court in Kearney v. City of Phila., 616 A.2d 72 (Pa. Cmwlth. 1992), which involved a claim of negligent abuse of a corpse.

11

In <u>Kearney</u>, the court found that "resolution of the issue (of whether the deceased's body was the personal property of his next of kin) is irrelevant" because Section 8542(b)(2) "allows recovery against a municipal authority for damages consisting of only 'those property losses suffered with respect to the personal property in the possession or control of the local agency.'" <u>Id</u>. at 75. The court then noted that, rather than seeking property losses stemming from the alleged negligent abuse of corpse, the plaintiffs were seeking damages for emotional harm related to their inability to have an open casket viewing during the funeral proceeding. <u>Id</u>. As a result, the court concluded that "regardless of whether this Court recognizes that the body of the decedent was [plaintiffs'] personal property, [their] claim would still fail to qualify as a cause of action under Section 8542(b) since [they are] alleging that the City's actions caused personal injuries [to them] rather than property loss." <u>Id</u>. <u>See</u> <u>also</u> <u>Meerhoff v. County of Erie</u>, 2011 WL 10843467, at *5 (Pa. Cmwlth. May 4, 2011) (finding that "regardless of whether the body of the decedent was personal property of the plaintiff's relative, the damages sought were for the plaintiff's personal injuries rather than for 'property damage' to the decedent's body").

The same holds true here, as Plaintiff seeks damages for "profound personal emotional and psychological loss," rather than property loss. (ECF No. 1, at ¶ 107). Accordingly, Plaintiff's state law claims fail to qualify as causes of action under Section 8542(b)(2) of the Act and are, thus, not excepted from the broad immunity granted to local agencies under the Act. As a result, Plaintiff's state law claims against Defendant Crawford under the Second and Sixth Claims of her complaint will be dismissed.

### 2.    **Defendant Coston**

In Section 8545 of the Act, municipal employees, like Defendant Coston, are granted the same immunity as local agencies, except that such employees may be liable for their conduct if it

amounted to "actual malice" or "willful misconduct." 42 Pa. C.S. § 8550. It is beyond dispute that there are no allegations of actual malice here; however, Plaintiff argues that Defendant Coston's actions may be construed as willful misconduct, thus removing him from the protection of the Act's immunity. (ECF No. 22, at p. 7). The Court agrees.

"Willful misconduct" has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006), quoting Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994). Here, Plaintiff has alleged that Defendant Coston made no attempt to contact Plaintiff or any other member of Decedent's family before directing the cremation of Decedent's body within hours of its discovery (ECF No. 1, at ¶¶ 23-24), and that he subsequently withheld Decedent's remains from Plaintiff (Id. at ¶¶ 48, 105-106). Construing these allegations in the light most favorable to Plaintiff, the Court finds that it may be implied from Defendant Coston's actions that he was, at least, aware of the substantial certainty that his actions would cause Plaintiff to suffer emotional and psychological harm. Thus, the Crawford Defendant's motion to dismiss Plaintiff's state law claims against Defendant Coston based on the Act's immunity will be denied.

### D.    Substantive Due Process Claims

Plaintiff alleges that Defendant Coston's direction to cremate Decedent's remains without her permission violated either her substantive or procedural due process rights under the fourteenth amendment to the United States Constitution, and that Defendant Crawford "also violated Plaintiff's due process rights (substantive or procedural), as the County maintained policies or customs of failing to train and/or supervise its employees concerning the legal

requirement to obtain authorization of a surviving spouse before cremating a deceased's remains." (ECF No. 1, at ¶¶ 79-80). The Crawford Defendants have moved to dismiss Plaintiff's substantive due process claim,[9] arguing, *inter alia*, that Plaintiff has failed to establish the existence of a constitutionally-protected property right. The Court agrees.

As a threshold matter, a plaintiff alleging a substantive due process violation must establish the existence of a property right protected by the substantive due process doctrine. Nicholas v. Pa. State Univ., 227 F.3d 133, 139–40 (3d Cir.2000). Substantive due process protects only those property rights that are "fundamental" under the Constitution. Id. Courts should generally be reluctant to expand the concept of substantive due process, since "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992).

Here, Plaintiff argues that her interest in Decedent's remains establishes the basis for a property right protected by substantive due process; however, the authority cited by Plaintiff in support of this argument is misplaced and unavailing. First, Plaintiff cites the Supreme Court's decision in Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157 (2004) for the proposition that the right of family members to direct and control the disposition of a deceased family member's body "has long been recognized at common law;" however, the Court in Favish was not addressing property rights; rather, the Court was addressing a family's privacy rights against the public exploitation of pictures of a deceased family member's remains. Id. at 158. Thus, the Court's findings in Favish have no application here.

---

[9] Though Plaintiff has alternatively pleaded a violation of her procedural due process rights, the Crawford Defendants do not separately address this claim. Thus, Plaintiff's procedural due process claim will survive the pleading stage.

Similarly, Plaintiff cites the case of <u>Marsh v. Cnty. of San Diego</u>, 680 F.3d 1148 (9th Cir. 2012), for the proposition that a parent has a substantive due process right regarding, *inter alia*, "how to dispose of remains;" however, like <u>Favish</u>, the <u>Marsh</u> court was not dealing with property rights, but was addressing "a parent's right to control the physical remains, memory and images of a deceased child against unwarranted public exploitation by the government." <u>Id</u> at 1154. The other cases cited by Plaintiff are equally inapposite. <u>See</u> <u>Brotherton v. Cleveland</u>, 923 F.2d 477 (6th Cir. 1991) (addressing property rights only in the context of procedural due process); <u>Whaley v. Tuscola</u>, 58 F.3d 1111 (6th Cir. 1995) (same).

Finally, Plaintiff attempts to establish a property right by pointing to the fact that, under 20 Pa. C.S. § 305, "Pennsylvania grants the surviving spouse sole authority in all matters pertaining to the deprivation of the remains of the decedent." (ECF No. 22, at p. 13). However, whether a certain property interest is protected by substantive due process is not determined by reference to state law. <u>Nicholas</u>, 227 F.3d at 140.

In sum, the Court finds that a property interest in the remains of a decedent's body is not fundamental and does not provide sufficient grounds for a substantive due process violation. As our sister court aptly stated in <u>Beaky v. County of Bucks</u>, 2009 WL 2390224 (E.D. Pa. 2009), "[t]he Third Circuit has limited the protections of substantive due process to certain real property cases, and [the Court] declines to expand it into unchartered areas." <u>Id</u>. at *6, <u>citing</u> <u>Nicholas</u>, 227 F.3d at 141–42 (stating that the Third Circuit has "so far limited non-legislative substantive due process review to cases involving real property ownership," such as zoning decisions and building permits). Accordingly, Plaintiff's substantive due process claim against the Crawford Defendants will be dismissed.

An appropriate Order follows.